UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JILLIAN LANKFORD,<br>　　　　　　Plaintiff,<br>v.<br>THE SALVATION ARMY,<br>　　　　　　Defendant. | Case No. 20-12656<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)**

## I.　Introduction

Plaintiff Jillian Lankford sued her former employer, defendant The Salvation Army ("Salvation Army"), alleging Salvation Army terminated her in retaliation for taking protected medical leave in violation of the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and the Michigan Elliot-Larsen Civil Rights Act, M.C.L. §§ 372.2101 *et seq.* ECF No. 1. The Court dismissed Lankford's state law claims on October 22, 2020. ECF No. 9.

Salvation Army moved for summary judgment of Lankford's remaining claims. ECF No. 21. The motion is fully briefed and the Court

heard oral argument on May 4, 2022. ECF Nos. 24, 25. Salvation Army also filed two notices of supplemental authority. ECF Nos. 31, 32.

For the reasons set forth below, the Court **DENIES** Salvation Army's motion for summary judgment (ECF No. 21).

**II.	Facts**

Salvation Army employed Lankford from 2007 through October 1, 2018. ECF No. 1, PageID.1. Her supervisors were Larry Manzella, Robert Idzior, and Jacqulynn Idzior. ECF No. 21, PageID.85. Lankford earned several promotions during her time at Salvation Army. *Id.* at PageID.86.

In May 2016, Lankford was the Assistant Director of Operations, a position she had held for one year. *Id.* at PageID.87. She requested a large raise in exchange for concessions including unenrolling from Salvation Army's health insurance program from three years. *Id.*; ECF No. 23-4, PageID.571. Salvation Army approved Lankford's proposal. *Id.* Lankford claims this proposal applied only to the Assistant Director of Operations role, while Salvation Army contends it applied to any position Lankford held during the three years covered in the agreement. ECF No. 23, PageID.539; ECF No. 21, PageID.87-88. The agreement itself discusses the duties involved in Lankford's Director of Operations position but does not specify

Page **2** of **12**

whether it was limited to that role. ECF No. 21-6, PageID.322. Lankford began earning her new salary effective May 15, 2016 and unenrolled from Salvation Army's health insurance effective July 1, 2017. *Id.* at PageID.88.

In January 2017, Lankford requested and Salvation Army approved four months of maternity leave for her first child. ECF No. 21, PageID.90. She was out from April through July 2017. *Id.* When Lankford returned, she was moved to a new position as Executive Assistant. ECF No. 21, PageID.88. This was not a promotion and included no salary increase. *Id.* Lankford spoke to Salvation Army's director of human resources, Dea Weathers, about re-enrolling in Salvation Army's health insurance plan because she no longer held the Assistant Director of Operations role to which, in Lankford's opinion, her promise not to enroll in health insurance concession was tied. Weathers provided her the necessary paperwork, Lankford completed it, Weathers approved it, and Lankford and her family were re-enrolled in Salvation Army's health insurance effective January 1, 2018. ECF No. 23, PageID.540. Just over one year had passed since Lankford promised not to enroll in Salvation Army's health insurance for three years.

Page **3** of **12**

Salvation Army contends that its administration "had no idea" Lankford had re-enrolled in the company's insurance because Lankford did not inform her supervisor or anyone in management that she had done so. *Id.* Salvation Army characterizes Lankford's re-enrollment as "secret" and "fraudulent." *Id.* at PageID.88-89, 92. However, Lankford re-enrolled with the full knowledge, participation, and approval of Salvation Army's human resources director. ECF No. 23, PageID.540.

In January 2018, Lankford informed her supervisors she was pregnant and requested four months maternity leave beginning in July. Lankford initially indicated she could continue working during her leave, but later decided she could not and informed management. ECF No. 1, PageID.4. TSA approved her leave. ECF No. 21, PageID.91. All three of Lankford's supervisors responded to her email regarding not working during her leave with supportive replies. *Id.* at PageID.90. However, Lankford alleges that the Izidors and Manzella began to treat her differently, leaving her off of emails on which she would ordinarily have been copied, nit-picking minor issues with her work, and avoiding eye contact with her. ECF No. 23, PageID.536.

Lankford began her leave on July 11, 2018. *Id.* at PageID.92. After giving birth on July 25, 2018, Lankford also added her newborn son to Salvation Army's health insurance plan by submitting an enrollment form to Salvation Army. *Id.* at PageID.541. Weathers again approved and entered the form. *Id.*

On August 27, 2018, Lankford received a text message from Weathers informing her about a "formality in question" as to the enrollment. *Id.* Lankford responded, "Ugh . . . [W]hat's wrong with my insurance[?] . . . My negotiated contract from [Assistant Director of Operations] that got me that raise?" *Id.*

The formality in question was this: while Lankford was out on leave, Salvation Army administration says it learned for the first time that Lankford had re-enrolled in their health insurance plan, despite agreeing not to do so for three years. *Id.* at PageID.93. Salvation Army decided that, because Lankford had "secret[ly] and fraudulent[ly] re-enroll[ed] in benefits in violation of her agreement with Salvation Army, termination was warranted." *Id.* However, Salvation Army decided to wait to terminate Lankford until she returned so as not to "disturb her leave". *Id.*

While Lankford was out, Jacqulynn Izidor also gathered written statements from Lankford's coworkers complaining of discourteous behavior and interpersonal conflict. *Id.* at PageID.93-94.

Lankford completed her maternity leave with full benefits for herself and her family. She returned to work on October 1, 2018 and was fired that day. ECF No. 1, PageID.5. Jacqulynn Izidor and Weathers met with Lankford and informed her, per the Termination Report they had prepared, that she was being terminated for deceitful conduct (namely, re-enrolling in the health insurance program) and disrespectful conduct towards other employees. ECF No. 21-19, PageID.410-12.

### III. Analysis

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion, courts must construe the facts in the light most favorable to the non-movant. *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022).

Lankford alleges that Salvation Army fired her in retaliation for taking protected maternity leave, in violation of the Family Medical Leave Act, 29

U.S.C. § 2615(a)(2), and the Pregnancy Discrimination Act, 42 U.S.C. 2000e(k).[1] Because the standards for evaluating these claims are, for the purposes of this motion, essentially the same, the Court considers the two claims together.

"The FMLA prohibits an employer from retaliating against an employee who takes leave under the FMLA." *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 408-09 (6th Cir. 2014) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). To establish a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, such as notifying the defendant of her intent to take leave under the FMLA or taking such leave; (2) she suffered an adverse employment action; and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Id*. If a plaintiff's claim is based on circumstantial evidence, *McDonnell Douglas Corp. v. Green*'s burden-shifting analysis applies. 411 U.S. 792 (1973); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). The burden

---

[1] Lankford's response brief discusses an FMLA interference claim in addition to the FMLA retaliation claim. ECF No. 23, PageID.543-45. However, this claim was not alleged in the complaint. ECF No. 1. The Court does not consider this claim because it was not properly alleged.

Page **7** of **12**

then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff. *McDonnell Douglas*, 411 U.S. at 802-04. The plaintiff then has the burden of showing that the defendant's reasons are merely a pretext for discrimination. *Skrjanc*, 272 F.3d at 315.

There is no dispute regarding the first two elements. Salvation Army argues that Lankford does not meet the third element because she shows no causal relationship between her requesting and taking maternity leave in 2018 and her termination. ECF No. 21, PageID.96.

The Sixth Circuit has held that "the causal connection between the protected activity and the adverse employment action necessary for a *prima facie* case of retaliation can be established solely on the basis of close temporal proximity." *Judge*, 592 F. App'x at 409-10 (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012). *DiCarlo*, 358 F.3d at 421) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in

Page **8** of **12**

time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation.").

Lankford engaged in protected activity when she requested leave and again while she took leave.[2] She was fired the exact day her leave ended. This temporal proximity is sufficient to raise an inference of retaliation. *See Judge*, 592 F. App'x at 409-10 (finding two-month period between the date employee's protected leave ended and the date of employee's termination sufficient temporal proximity to show a causal relationship); *Clark*, 424 F. App'x at 473 ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *Mickey*, 516 F.3d at 526 (causal connection inferred where defendant fired plaintiff on the same day he filed an EEOC

---

[2] Salvation Army characterizes the temporal proximity of Lankford's claim as ten months because it focuses on the time between the date Lankford requested leave (January 2018) and her termination (October 2018). However, courts in the Sixth Circuit "measure[] temporal proximity from the date FMLA leave expired, not just when the employee first requested it, for the purposes of measuring temporal proximity." *Judge*, 592 F. App'x at 410 (citing *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011)).

complaint); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (causal connection at the *prima facie* stage was established by the three months that passed between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work); *Deboer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005) (causal connection inferred where plaintiff was demoted the day after the she requested maternity). Lankford met her burden of showing a *prima facie* case of retaliation for both her FMLA and PDA claims.

     Salvation Army also met its burden of articulating a legitimate, nondiscriminatory reason for firing Lankford. Salvation Army claims it fired Lankford primarily because she "fraudulently" re-enrolled in its health insurance program after agreeing not to do so for three years. ECF No. 21, PageID.101. It is unclear how Lankford's re-enrollment was deceitful, given that she re-enrolled with the permission and approval of Salvation Army's own human resources director. However, TSA claims Lankford should have notified management of her re-enrollment but instead deliberately kept it from them because she knew it was a violation of her agreement. ECF No. 21, PageID.88. "Fraud and dishonesty constitute lawful, non-retaliatory bases for termination." *Seeger v. Cincinnati Bel Tel. Co.*, 681 F.3d 274, 284

(6th Cir. 2012) (internal citations omitted). Additionally, whether deceitful or not, the re-enrollment may have been in violation of the agreement she made to secure her raise in 2017. Salvation Army met its burden to show a non-retaliatory reason for Lankford's termination.

Lankford provides reason to think Salvation Army's proffered reason may be pretextual. First, the parties dispute whether the agreement pertained only to the Assistant Director of Operations position Lankford held at the time she proposed and received the raise, or whether it also extended to the Executive Assistant position to which Lankford was transferred after her first maternity leave. The Court cannot resolve this factual question at this stage.

Second, as noted above, Lankford's re-enrollment occurred with the participation and approval of Salvation Army's human resources director. ECF No. 23, PageID.540. Lankford also argues that Salvation Army management was aware of her re-enrollment months before it claims to have "discovered" it during summer 2018, because the records were in her personnel file and, in January 2018, Manzella reviewed Lankford's personnel file as part of an audit and forwarded the results of this audit to the Idziors. ECF No. 23, PageID.540-41.

Page **11** of **12**

If Lankford is right about either (or both) of these assertions, then Salvation Army's argument that it terminated Lankford because it discovered she committed fraud has "no basis in fact" and is, accordingly, pretextual. *See Judge*, 592 F. App'x at 410 (A plaintiff may meet his or her burden to "demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.") (internal quotation and citations omitted). This is sufficient evidence of pretext.

Accordingly, Lankford's FMLA and PDA claims survive summary judgment.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Salvation Army's motion for summary judgment (ECF No. 21).

**IT IS SO ORDERED**.

Dated: January 20, 2023

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge